| | |
|---|---|
| OPERATIVE PLASTERERS' & CEMENT MASONS' INTERNATIONAL ASSOCIATION OF THE UNITED STATES AND CANADA, AFL-CIO, <br><br>Petitioner,<br><br>v.<br><br>JORDAN INTERIORS, INC., et al.,<br><br>Respondents. | Civil Action No. 09-1160 (RBW) |
| UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA, et al.,<br><br>Petitioners,<br><br>v.<br><br>OPERATIVE PLASTERERS' & CEMENT MASONS' INTERNATIONAL ASSOCIATION OF THE UNITED STATES AND CANADA, AFL-CIO,<br><br>Respondent. | Civil Action No. 09-2212 (RBW) |

## AMENDED MEMORANDUM OPINION[1]

In this case, the United Brotherhood of Carpenters and Joiners of America ("Brotherhood of Carpenters") and the Southwest Regional Council of Carpenters ("Southwest Regional

---

[1] This Amended Memorandum Opinion amends the September 22, 2010 Memorandum Opinion only with respect to Civil Action No. 09-2212. It therefore only addresses the arbitration award rendered by Arbitrator Tony Kelly with respect to Project No. 7. The September 22, 2010 Memorandum Opinion and Order stand as the Court's resolution of the issues presented in Civil Action No. 09-1160.

Council") filed a petition with this Court to vacate an arbitration award issued by Arbitrator Tony A. Kelly pursuant to the Plan for the Settlement of Jurisdictional Disputes in the Construction Industry ("Jurisdictional Plan"), which found in favor of the Operative Plasterers' and Cement Masons' International Association, ALF-CIO ("Association" or "OPCMIA"). Petition to Vacate Arbitration Award ("Pet. to Vacate") at 1. The Association then filed its answer and a counterclaim requesting that the Court: (1) confirm the award issued by Arbitrator Kelly, (2) order Jordan Interiors, Inc. ("Jordan Interiors"), a contractor, and the Brotherhood of Carpenters and the Southwest Regional Council, a national union and its local affiliate, respectively, to comply with the award; and (3) award it attorneys' fees, court costs, and expenses incurred seeking enforcement of Arbitrator Kelly's award. Association's Answer to Petition to Vacate Arbitration Award and Counter-Claim to Confirm Arbitration Award ("Ass'n's Ans.") at 12.

This matter is now before the Court on the parties' cross-motions for summary judgment under Federal Rule of Civil Procedure 56. See Brotherhood of Carpenters' and Southwest Regional Council's Consolidated Motion for Summary Judgment ("Council's Mot."); OPCMIA's Consolidated Motion for Summary Judgment ("Ass'n's Mot."). For the following reasons, the Court must grant the Association's cross-motion for summary judgment and confirm Arbitrator Kelly's award.[2]

---

[2] In addition to the submissions already cited, the Court also considered the following documents in resolving the cross-motions for summary judgment: the Association's Memorandum in Support of Its Consolidated Motion for Summary Judgment; the Council's Memorandum of Points and Authorities in Support of their Consolidated Motion for Summary Judgment; the Council's Opposition to Consolidated Motion for Summary Judgment ("Council's Opp'n"); the Association's Memorandum in Opposition to Respondents' Motion for Summary Judgment ("Ass'n's Opp'n."); the Council's Reply Brief in Support of their Consolidated Motion for Summary Judgment ("Council's Reply"); and Association's Reply Brief in Support of Its Consolidated Motion for Summary Judgment ("Ass'n's Reply").

# I. BACKGROUND

Central to the dispute at hand is the Los Angeles Unified School District Project Stabilization Agreement ("LAUSD Agreement"), a pre-hire collective bargaining agreement authorized under 29 U.S.C. § 158(f) (commonly referred to as an "8(f)" agreement). Pet. to Vacate, Exhibit ("Ex.") A (LAUSD Agreement). A contractor can enter into a § 8(f) collective bargaining agreement, such as the LAUSD Agreement here, recognizing one or more bargaining representatives despite a lack of majority support from its employees.[3] 29 U.S.C. § 158(f) (2006). The LAUSD Agreement "establishes the labor relations [p]olicies and [p]rocedures for the [Los Angeles Unified School] District and for the craft employees represented by the [u]nions engaged in the District's new school and building construction and substantial rehabilitation and capital improvement program." Pet. to Vacate, Ex. A (LAUSD Agreement) at 1.

---

[3] Subtitled "Agreement covering employees in the building and construction industry," 29 U.S.C. § 158(f) provides:

> It shall not be an unfair labor practice under subsections (a) and (b) of this section for an employer engaged primarily in the building and construction industry to make an agreement covering employees engaged (or who, upon their employment, will be engaged) in the building and construction industry with a labor organization of which building and construction employees are members (not established, maintained, or assisted by any action defined in subsection (a) of this section as an unfair labor practice) because (1) the majority status of such labor organization has not been established under the provisions of section 159 of this title prior to the making of such agreement, or (2) such agreement requires as a condition of employment, membership in such labor organization after the seventh day following the beginning of such employment or the effective date of the agreement, whichever is later, or (3) such agreement requires the employer to notify such labor organization of opportunities for employment with such employer, or gives such labor organization an opportunity to refer qualified applicants for such employment, or (4) such agreement specifies minimum training or experience qualifications for employment or provides for priority in opportunities for employment based upon length of service with such employer, in the industry or in the particular geographical area: Provided, That nothing in this subsection shall set aside the final proviso to subsection (a)(3) of this section: Provided further, That any agreement which would be invalid, but for clause (1) of this subsection, shall not be a bar to a petition filed pursuant to section 159(c) or 159(e) of this title.

Local unions and contractors bind themselves to the LAUSD Agreement in different ways. The unions are "signatory" parties to the LAUSD Agreement. Id. at 12 § 3.1; see also id. at 47-48 (listing all the local unions signatory to the Agreement). Contractors, on the other hand, are bound to the LAUSD Agreement on a project-to-project basis. Id. at 9 § 2.5(b). According to the LAUSD Agreement,

> all contractors and subcontractors of whatever tier, who have been awarded contracts for work covered by this Agreement, shall be required to accept and be bound to the terms and conditions of this Project Stabilization Agreement, and shall evidence their acceptance by the execution of the Agreement or of the [l]etter of [a]ssent . . . prior to [the] commencement of work.

Id. Once a contractor is bound to the LAUSD Agreement, it is required to "recognize[] the [Los Angeles/Orange Counties Building and Construction Trades] Council and the signatory local [u]nions as the exclusive bargaining representatives for the employees engaged in Project Work." Id. at 12 § 3.1. On May 12, 2003, approximately thirty labor organizations, including the Brotherhood of Carpenters' local affiliate, the Southwest Regional Council, and the Association's local affiliate, Plasterers Local 200, executed the LAUSD Agreement. Id. at 47-48; Ass'n's Reply at 12.[4]

Pursuant to § 8.1 of Article 8 of the LAUSD Agreement, all work assignments for construction projects covered by the LAUSD Agreement are required to be made "in accordance with the Plan for the Settlement of Jurisdictional Disputes in the Construction Industry ["Jurisdictional Plan"]." Pet. to Vacate, Ex. A (LAUSD Agreement) at 28, § 8.1; Ass'n's Ans., Ex. 1 (Jurisdictional Plan) at 30. Under § 8.2 of the LAUSD Agreement, parties to the Agreement are required to abide by the Jurisdictional Plan's procedures for resolving

---

[4] The LAUSD Agreement was amended on or about October 31, 2003, and remains in effect through September 2013. Pet. to Confirm, Ex. 3 (Amendment Extending the Agreement).

jurisdictional disputes. Pet. to Vacate, Ex. A (LAUSD Agreement) at 28, § 8.2. As the Association explains, a jurisdictional dispute arises "when two labor organizations have a disagreement over whether an employer has properly assigned work to be performed by a group of employees represented by one of those unions rather than a different group of employees represented by the other union." Ass'n's Mot., Ex. 1 (Association's Statement of Material Facts As to Which There Is No Genuine Issue ("Ass'n's Stmt. of Facts")) ¶ 4.

On June 22, 2009, pursuant to an election petition filed by Jordan Interiors with the National Labor Relations Board, an election was held by the employees of Jordan Interiors, and they unanimously voted for the Southwest Regional Council to be their exclusive representative. Council's Mot., Ex. 2 (Council's Statement of Material Facts to Which There Is No Genuine Issue ("Council's Stmt. of Facts")) ¶ 11. "Shortly[] thereafter," Council's Opp'n at 3, the National Labor Relations Board certified the Southwest Regional Council as the Jordan Interiors employees' exclusive representative. Id. A jurisdictional dispute then arose as a result of Jordan Interiors' assignment of plastering work to its workers who are represented by the Southwest Regional Council, rather than to workers represented by Plasterers Local 200. Id. ¶ 27. In October 2009, the Association notified the Jurisdictional Plan's administrator of the jurisdictional dispute at Project No. 7, invoking the Jurisdictional Plan under the LAUSD Agreement.[5] Id. ¶ 14. On October 22, 2009, Jordan Interiors executed a letter of assent for Project No. 7. Ass'n's Mot., Declaration of Rob Mason ("Mason Decl.") Ex. 1 (Letter of Assent for Project No. 7).

---

[5] While neither the Association nor the United Brotherhood of Carpenters are signatory to the Agreement, the Jurisdictional Plan directs the National and International Unions to challenge work assignments and represent their local affiliates in jurisdictional disputes. See Ass'n's Ans., Ex. 1 (Jurisdictional Plan) at 6 ("When a dispute over an assignment of work arises, the [n]ational or [i]nternational [u]nion challenging the assignment . . . shall notify the [a]dministrator in writing.").

5

A hearing on the jurisdictional dispute was held by Arbitrator Kelly on November 5, 2009,[6] Council's Mot., Ex. 2, Council's Stmt. of Facts ¶ 18, but the Brotherhood of Carpenters, the Southwest Regional Council, and Jordan Interiors did not attend or participate despite being provided notice of the hearing, Ass'n's Mot., Ex. 1, Ass'n's Stmt. of Facts ¶ 31. On November 10, 2009, Arbitrator Kelly issued his opinion, which ordered Jordan Interiors to assign the disputed work at Project No. 7 to employees represented by the Association. Id. ¶ 33. Jordan Interiors, the Brotherhood of Carpenters, and the Southwest Regional Council have failed to comply with Arbitrator Kelly's decision. Id. ¶ 34.

Currently before the Court are the parties' cross-motions for summary judgment under Federal Rule of Civil Procedure 56, arguing for or against the enforceability of the arbitration award awarding the Project No. 7 work to individuals represented by the Association. Specifically, the Brotherhood of Carpenters and the Southwest Regional Council request that the Court vacate the arbitration award, Council's Mot. at 1-2, while the Association requests that the Court affirm the award, Ass'n's Mot. at 1. The Brotherhood of Carpenters and the Southwest Regional Council argue that the award is invalid and should be vacated for two reasons. First, they maintain that there was no valid contract between the Association and Jordan Interiors authorizing the arbitration. Council's Reply at 1-2. They assert that once the Jordan Interiors employees exercised their rights under 29 U.S.C. § 157 and selected the Southwest Regional Council as their exclusive representative, any conflicting contractual rights that the Association had with Jordan Interiors under the § 8(f) pre-hire Agreement were rendered void. Id. Second,

---

[6] Although the Association at times states that the arbitration took place on June 12, 2009, see, e.g., Ass'n's Mot., Ex. 1 (Ass'n's Stmt. of Facts) ¶ 30 ("Arbitrator Kelly convened a hearing over the dispute in Washington, D.C. on June 12, 2009"), there is ample evidence in the record that the arbitration regarding the disputed Project No. 7 work actually occurred on November 5, 2009, with the decision issuing on November 10, 2009, Council's Opp'n at 5.

the Brotherhood of Carpenters and the Southwest Regional Council allege that the award is "repugnant" to the National Labor Relations Act because ordering Jordan Interiors to assign work to workers represented by Plasterers Local 200 "impinge[s] on the Board's election certification of the [Southwest Regional Council] and the Section 7 rights of Jordan Interiors' employees." Id. at 14.

In contrast, the Association asserts that the certification of the Southwest Regional Council as Jordan Interiors' employees' representative is irrelevant as a matter of law, and that all of the parties remain contractually bound by the LAUSD Agreement's incorporation of the Jurisdictional Plan and its procedures for the resolution of jurisdictional disputes. Ass'n's Reply at 16. The Association further contends that the arbitration award is not repugnant to the National Labor Relations Act because the dispute that resulted in the award is jurisdictional, rather than representational, in nature. They advance this argument based on the premise that the reassignment of the disputed work to Plasterers Local 200 would not interfere with the Jordan Interiors employees' choice of representation. Id. Thus, the two issues before the Court are: (1) whether the election, and the subsequent certification of the Southwest Regional Council by the National Labor Relations Board, as the exclusive representative of Jordan Interiors' employees prospectively terminated the parties' acceptance of the LAUSD Agreement, and, if the Agreement was valid when Jordan Interiors issued its letter of assent on October 22, 2009, (2) whether Arbitrator Kelly's award is "repugnant" to or violates § 7 the National Labor Relations Act.

## II. STANDARD OF REVIEW

A. Federal Rule of Civil Procedure 56

A court will grant a motion for summary judgment under Federal Rule of Civil Procedure 56 "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When evaluating such a motion, the Court must view the evidence "in the light most favorable to the non-moving party." Evans v. Sebelius, 674 F. Supp. 2d 228, 238 (D.D.C. 2009) (citations omitted). The Court must also accept evidence provided by the non-moving party as true, drawing "all justifiable inferences" in the non-moving party's favor. Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)).

B. The Court's review of arbitration awards

With respect to this Court's review of arbitration awards, "when parties to a collective bargaining agreement have agreed to submit to arbitration, the function of the court is extremely limited." Am. Postal Workers Union, AFL-CIO v. U.S. Postal Serv., 254 F. Supp. 2d 12, 14 (D.D.C. 2003) (citing Cole v. Burns Int'l Sec. Servs., 105 F.3d 1465, 1473 (D.C. Cir. 1997) (internal citations omitted)). "Although [c]ourts exercise only limited review of the merits of an arbitrator's decision in a labor dispute, they retain full authority to vacate awards that fail to confine themselves to matters within the scope of the arbitrator's assigned jurisdiction," Howard Univ. v. Metro. Campus Police Officer's Union, 519 F. Supp. 2d 27, 32 (D.D.C. 2007) (alteration in original) (quoting Commc'n Workers of Am., AFL-CIO, CLC v. Am. Tel. & Tel. Co., 903 F.Supp. 3, 5 (D.D.C. 1995) (internal quotations and citations omitted)), and it is well established that an arbitration award must "draw its essence from the parties' collective bargaining agreement." Id. Thus, the arbitrator must "have [had] the contractual authority to" issue the

8

award before the award can be enforced. Barrentine v. Arkansas-Best Freight Sys., Inc., 450 U.S. 728, 744 (1981) ("An arbitrator's power is both derived from, and limited by, the collective-bargaining agreement."). Accordingly, in instances where the arbitrator's authority stems from a collective bargaining agreement, an arbitration award will be unenforceable if: (1) the collective bargaining agreement was subsequently terminated and the arbitrator's authority extinguished, see Pioneer Natural Res. USA, Inc. v. Paper, Allied Indus., Chem. & Energy Int'l Union, 338 F.3d 440, 441 (5th Cir. 2003) (per curiam); or (2) the award "is in 'explicit conflict' with 'other laws and legal precedents,'" Am. Postal Workers Union v. U.S. Postal Serv., 550 F.3d 27, 32 (D.C. Cir. 2008) (citing United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 43 (1987)) (internal quotation marks omitted).

### III. ANALYSIS

As will be explained further below, the Court finds that the Brotherhood of Carpenters' and the Southwest Regional Council's argument that,

> [c]ontrary to the [Association's] central premise, the [Southwest Regional Council], the [Brotherhood of Carpenters], and [Jordan Interiors] are not contractually obligated to submit to the Plan through the [LAUSD Agreement] . . . [because t]he workers of Jordan Interiors voted unanimously in an election held on June 22, 2009 to certify the [Southwest Regional Council] as [their] exclusive representative on all jobs such as the ones involved in the underlying Plan awards

Council's Opp'n at 1, fails for three, interrelated reasons.[7] See also Ass'n's Opp'n at 13 (arguing that the United Brotherhood's and the Southwest Regional Council's motion for summary judgment "is based upon one defense . . . that the arbitration award[] issued by Arbitrator[] . . .

---

[7] Stating the obvious, the claim that the Southwest Regional Council is not bound by the LAUSD Agreement has no basis in fact because the Southwest Regional Council is a signatory to the Agreement. See Pet. to Vacate, Ex. A (LAUSD Agreement) at 48 (listing "Carpenters Regional Council" as a signatory); see also, Gannon Declaration ("Gannon Decl.") ¶ 10 ("The Southwest Regional Council of Carpenters is 'stipulated' to the plan by virtue of contract, the [LAUSD Agreement]. . . . The [Southwest Regional Council] is also a signatory to an amendment of the LAUSD Agreement that extends the terms of that Agreement to all projects arising in the Los Angeles Unified School District."); Pet. to Vacate ¶ 11 ("The [LAUSD Agreement] was signed by both [the] [Southwest Regional Council] and [Plasterers Local 200].").

9

Kelly [is] unenforceable because the [National Labor Relations Board] has certified the Southwest Regional Council as the exclusive bargaining representative of Jordan Interiors' employees"). All three of these reasons are rooted in the validity of the LAUSD Agreement between the parties to this action and the manner in which project work covered by the Agreement can be assigned by a contractor without violating its employees' rights to exclusive representation and to collective bargaining. First, the LAUSD Agreement did not require Jordan Interiors' employees' to recognize a bargaining representative other than the Southwest Council when Jordan Interiors assented to that Agreement on October 22, 2009; Jordan Interiors' entrance into the Agreement was therefore valid and accorded Arbitrator Kelly the authority to resolve the Project No. 7 jurisdictional dispute. Second, the Brotherhood of Carpenters' and Southwest Regional Council's argument overlooks the differences between a jurisdictional dispute and a representational dispute. Third, the arbitration award can be enforced in a manner that does not violate the National Relations Labor Act and that remedies the conflicting obligations Jordan Interiors brought upon itself with its October 22, 2009 letter of assent.

In a nod to the unique nature of the construction industry, the National Labor Relations Act creates a limited exception to its otherwise general requirement that employers must obtain majority support from employees before signing collective bargaining agreements. 29 U.S.C. § 158(f). Thus, as noted above, a contractor may enter into an § 8(f) pre-hire agreement recognizing one or more representatives despite the lack of majority employee support. Id. Section 8(f), however, also offers protection to employees in such circumstances by allowing them to decertify or change representatives at any time during the relationship through an election. Id.; see also Nova Plumbing v. Nat'l Labor Relations Bd., 330 F.3d 531, 534 (D.C. Cir. 2003). Upon the National Labor Relations Board's certification of a union as the exclusive

representative of a group of employees, any pre-existing contractual obligations arising from a § 8(f) agreement that recognizes other signatory unions as the employees' representatives are nullified. See Nova Plumbing, 330 F.3d at 536-37 ("An agreement between an employer and union is void and unenforceable, [Int'l Ladies' Garment Workers' Union, AFL-CIO v. NLRB, 366 U.S. 731, 738 (1961)], if it purports to recognize a union that actually lacks majority support as the employees' exclusive representative."). After decertification, termination of the § 8(f) relationship occurs because the § 7 protections accorded to employees, including the "right to self-organization, to form, join, or assist labor organizations, [and] to bargain collectively through representatives of their own choosing," 29 U.S.C. § 157, are fundamental; these rights are often considered superior to the contractual obligations derived from collective-bargaining agreements, such as those derived from pre-hire agreements, which were not endorsed by majority employee support. See Nova Plumbing, 330 F.3d at 537. With this legal framework as its guide, the Court will now explain in detail the three reasons why the Brotherhood of Carpenters' and the Southwest Regional Council's challenge to Arbitrator Kelly's award must be rejected.

First, because the LAUSD Agreement did not require Jordan Interiors' employees' to recognize a bargaining representative other than the Southwest Council when Jordan Interiors assented to that Agreement on October 22, 2009, Jordan Interiors' entrance into the Agreement was valid and granted Arbitrator Kelly the authority to resolve the Project No. 7 jurisdictional dispute. It is undisputed that the employees of Jordan Interiors unanimously elected the Southwest Regional Council to serve as their exclusive bargaining representative on June 22, 2009, well before Jordan Interiors executed the letter of assent for Project No. 7 on October 22, 2009. See Pet. to Vacate ¶¶ 1, 19 (indicating the election occurred on June 22, 2009); Ass'n's

11

Mot., Mason Decl., Ex. 1 (Letter of Assent for Project No. 7) (indicating the letter of assent was issued on October 22, 2009). Thus, if the LAUSD Agreement had required the Jordan Interiors employees to recognize a bargaining representative other than the Southwest Regional Council, Jordan Interiors' assent to the agreement would have been void, as it could not legally have entered into the Agreement. See Nova Plumbing, 330 F.3d at 536-37 ("An agreement between an employer and union is void and unenforceable, if it purports to recognize a union that actually lacks majority support as the employees' exclusive representative.") (citation omitted). The LAUSD Agreement, however, requires no such recognition by Jordan Interiors or its employees.

> Section 3.1 of the LAUSD Agreement states,
>
> [t]he Contractor recognizes the [Los Angeles/Orange Counties Building and Construction Trades] Council and the signatory local [u]nions as the exclusive bargaining representative for the employees engaged in Project Work. Such recognition does not extend beyond the period when the employee is engaged in Project Work.

Pet. to Vacate, Ex. A (LAUSD Agreement) at 12 § 3.1 (emphasis added). This section does not require Jordan Interiors to recognize all thirty signatory local unions as the representative of its employees (i.e., Jordan Interiors' entire workforce, the body that unanimously voted for representation by the Southwest Council); rather, the recognition of signatory unions to the LAUSD Agreement extends to the employees who are engaged in Project Work (i.e., presumably a smaller subset of Jordan Interiors' workforce who will actually work on projects covered by the Agreement or employees referred to Jordan Interiors to perform such work by other signatory unions). Accordingly, the LAUSD Agreement does not impermissibly attempt to alter or strip the employees performing project work of their right to choose an exclusive representative to engage in negotiations with their employer on their behalf; rather, § 3.1 of the LAUSD Agreement simply requires contractors to staff LAUSD projects with employees represented by

one of the thirty local unions signatory to the LAUSD Agreement.[8] Put simply, the recognition clause of the LAUSD Agreement applies to contractors who have won bids for LAUSD projects, regardless of what union may or may not represent that contractor's employees. Consequently, the LAUSD Agreement did not purport to strip the Jordan Interiors employees of their right to exclusive representation by the Southwest Regional Council. Jordan Interiors' assent to the LAUSD Agreement was therefore valid and enforceable, resulting in Jordan Interiors stipulating to the Jurisdictional Plan's policy of having jurisdictional disputes resolved through arbitration. Thus, Arbitrator Kelly was authorized to arbitrate the jurisdictional dispute.

Next, based on the record before the Court, it is clear that this litigation concerns a jurisdictional dispute, rather than a representational dispute, as the arguments advanced by the United Brotherhood and Southwest Regional Council would seem to suggest. The Brotherhood of Carpenters and the Southwest Regional Council maintain that "[t]he [Association's] claim to represent any of Jordan Interiors' employees is based on nothing more than a collective bargaining agreement that Jordan Interiors did not even sign. Jordan Interiors merely assented to

---

[8] Other sections of the LAUSD Agreement confirm that this reading of § 3.1 of the Agreement is correct. For example, Section 3.6(a) of the Agreement provides, in part,

> [e]xcept as otherwise provided in a separate collective bargaining agreement(s) to which the contractor is signatory, a specialty or sub-contractor may employ, as needed, first a member of his core workforce, then an employee through a referral from the appropriate union hiring hall . . . and so on until a maximum of five core employees are employed, after which all further employees shall be employed pursuant to the other provisions of this Article, starting with section 3.3.

Pet. to Vacate, Ex. A (LAUSD Agreement) at 15, § 3.6. This section both contemplates that a contractor may be subject to collective bargaining agreements with its own employees and requires a contractor to hire only from union halls signatory to the Agreement. Section 3.3(a), which sets forth referral procedures, provides that "for signatory unions now having a job referral system contained in a Schedule A, the contractor agrees to comply with such system and it shall be used exclusively by such contractor, except as modified by this Agreement." Id. at 13, § 3.3(a).

the [LAUSD Agreement] after it had been entered into by the [Association] and the LAUSD."[9] Council's Opp'n at 9-10. The Court's understanding of the Association's position in this litigation is not that it should represent Jordan Interiors' employees, but that the work performed on Project No. 7 should be assigned to members of Plasterers Local 200, the Association's local affiliate. See Ass'n's Opp'n at 15 ("[B]y demanding that Jordan Interiors assign [the Project No. 7 plastering work] to employees represented by the [Association], neither the [Association] nor Plasterers Local 200 were making a demand for recognition as the representatives of Jordan Interiors' employees.") Indeed, this is the exact determination made by Arbitrator Kelly in the award currently under review. See Pet. to Vacate, Ex. G (November 10, 2009 Arbitration Award) ("It is the opinion of the Arbitrator [that] the [Association] has offered convincing proof to support their claim to the work in dispute . . . .") (emphasis added). And the National Labor Relations Board has made clear that

> a Board certification in a representation proceeding is not a jurisdictional award; it is merely a determination that a majority of the employees in an appropriate unit have selected a particular labor organization as their representative for purposes of collective bargaining. . . . However, unlike a jurisdictional award, this determination by the Board does not freeze the duties or work tasks of the employees in the unit found appropriate.

Plumbing Contractors Ass'n of Baltimore v. United Ass'n of Journeymen and Apprentices, Local No. 48, 93 N.L.R.B. 1081, 1087 (1951); see also United Brotherhood of Carpenters v. Robert Jelinek, et al., 127 N.L.R.B. 565, 576 n.13 (1960) (expressing the inability to accept the argument that a demand for recognition and bargaining was implicit in a demand that members of a union be assigned the work in question). In other words, the certification of the Southwest

---

[9] As explained above, the LAUSD Agreement clearly provides that a contractor shall become bound by the Agreement with the issuance of a letter of assent. Thus, the October 22, 2009 letter of assent is not "mere assent," but is an indication of Jordan Interiors' willingness to be bound by the LAUSD Agreement in the exact manner called for by the Agreement. See Pet. to Vacate, Ex. A (LAUSD Agreement) at 9 § 2.5(b).

14

Regional Council as the exclusive bargaining representative of the Jordan Interiors employees pertains only to the representation of those employees, and not the work assigned to those employees by the employer. Accordingly, the Court agrees with the Association that "[t]he fact that a labor organization has been certified as the exclusive bargaining representative of the group performing the work does not preclude a jurisdictional dispute over the assignment of that work." Ass'n's Reply at 11. Therefore, Jordan Interiors' October 22, 2009 assent to be bound by the LAUSD Agreement and its incorporation of the Jurisdictional Plan's resolution of jurisdictional disputes through arbitration, was not an infringement of its employees' representational rights. Jordan Interiors' assent was thus valid and Arbitrator Kelly acted within the parameters of the LAUSD Agreement (and, consequently, the Jurisdictional Plan) when he resolved the jurisdictional dispute over the work to be performed at Project No. 7 in favor of the Association.

Finally, the Southwest Regional Council and the Brotherhood of Carpenters argue that in order to enforce the arbitration award, Jordan Interiors would have to violate the National Labor Relations Act by refusing to honor its workers' rights to exclusive representation and to collective bargaining and "force its employees to accept the [Association] as their representative or terminate the employees and replace them with [Association-]represented workers." Council's Reply at 3. Again, this misrepresents the nature of the conflict, portraying it as a representational dispute rather than a jurisdictional dispute. The arbitration award issued by Arbitrator Kelly in November 2009 designated the proper work assignment under the Jurisdictional Plan and required Jordan Interiors to reassign the plastering work at Project No. 7 to members of Plasterers Local 200. Ass'n's Mot., Ex. 1 (Ass'n's Stmt. of Facts) ¶ 33. Allowing a contractor such as Jordan Interiors to assert the exclusive representation of its employees as a shield against

jurisdictional awards made in accordance with the Jurisdictional Plan would allow a contractor to enjoy the benefits of the LAUSD Agreement without complying with all of the Agreement's terms and conditions—namely the provision requiring resolution of jurisdictional disputes through arbitration.

      The Association contends that Jordan Interiors could "subcontract the plastering work to a contractor who employs workers represented by Plasterers Local 200 and the [Association]" without violating any § 7 rights because the certification of representation extends only to the employees and reassignment of work does not affect such representation. Ass'n's Opp'n. at 3-4. In response, while admitting that such a remedy is possible, the Southwest Regional Council and the Brotherhood of Carpenters again conflate the employees (i.e., the subject addressed by certification) with the employees' work assignments (i.e., the subject addressed by jurisdiction), stating that this approach "punishes Jordan Interiors' employees for having selected the [Southwest Regional Council] as their representative by forcing Jordan Interiors to take the disputed work away from the [Southwest Regional Council]-represented employees and giving it to [Association]-represented employees." Council's Reply at 13. For several reasons the Brother of Carpenters' and the Southwest Regional Council's position fails. First, as explained above, the nature of a representational dispute is different from a jurisdictional dispute and the latter may be resolved regardless of the certification of one union as a group of employees' exclusive representative. See Carey v. Westinghouse Elec. Corp., 375 U.S. 261, 269 (1964) (explaining that "a [National Labor Relations] Board certification in a representation proceeding . . . does not per se preclude the employer from adding to or subtracting from the employees' work assignments"). Second, because Jordan Interiors assumed contractual obligations with respect to the LAUSD Agreement when it issued its October 22, 2009 letter of assent, they should be

16

required to fulfill these obligations. Requiring Jordan Interiors to subcontract the disputed work would hold Jordan Interiors to its contractual obligations and prevent Jordan Interiors from assuming contractual obligations that it had no intention of performing.

A.      Attorneys' Fees and Costs associated with Civil Action 09-cv-2212-RBW

Article VII § 2(c) of the Jurisdictional Plan provides that a "party seeking enforcement of an Arbitrator's decision . . . due to the failure of another party to abide by the decision or ruling shall be reimbursed by the party failing to abide by the decision or ruling for any attorneys' fees, court costs and expenses incurred." Ass'n's Ans., Ex. 1 (Jurisdictional Plan) at 30. Because the Court has found that the parties to this dispute are bound to comply with the terms of the LAUSD Agreement and therefore also the Jurisdictional Plan in regard to the arbitration award, and given that it is undisputed that Jordan Interiors, the Southwest Regional Council, and the Brotherhood of Carpenters have failed to comply with Arbitrator Kelly's decision, Ass'n's Mot., Ex. 1 (Ass's Stmt. of Facts) ¶ 26, the Court finds that the Association is entitled to an award of attorneys' fees and costs incurred in this action to enforce the arbitration award.

## IV. CONCLUSION

Because the LAUSD Agreement does not require a contractor like Jordan Interiors to recognize the signatory local unions as the bargaining representative of its employees, the certification of the Southwest Regional Council as the exclusive bargaining representative of the Jordan Interiors employees did not prevent Jordan Interiors from entering into the LAUSD Agreement. Thus, because Jordan Interiors executed a letter of assent binding itself to the LAUSD Agreement, it was required to make the work assignment on Project No. 7 pursuant to the arbitration award issued by Arbitrator Kelly in accordance with the Jurisdictional Plan and assign the disputed work to workers represented by Plasterers Local 200. Accordingly, the

Association's motion for summary judgment is granted, and the United Brotherhood of Carpenters' and the Southwest Regional Council's cross-motion for summary judgment is denied. Additionally, the Court finds that the Association is entitled to recover its attorneys' fees and court costs associated with its efforts to enforce Arbitrator Kelly's arbitration award.[10]

      **SO ORDERED** this 1st day of December, 2011.

                                        REGGIE B. WALTON
                                        United States District Judge

---

[10] The Court will issue an Order consistent with this Memorandum Opinion.